Filed 4/14/23  In re Yasmine D. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re YASMINE D. et al., Persons Coming Under the Juvenile Court Law. | B318410 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP03652A-B) |
| Plaintiff and Respondent, | |
| v. | |
| DARREN D. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant, Darren D.

Law Office of Linda J. Conrad and Linda J. Conrad, under appointment by the Court of Appeal, for Defendant and Appellant, G.I.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel for Plaintiff and Respondent.

———————————————

Darren D. (father) and Rochelle T. (mother) are parents of Yasmine D.  The juvenile court sustained an allegation in a dependency petition brought on behalf of Yasmine pursuant to Welfare and Institutions Code[1] section 300 that father failed to protect Yasmine, then only several months old, from the risks posed by mother's substance abuse.

Father appeals, contending the juvenile court's jurisdictional order sustaining the allegation is not supported by substantial evidence.  Father asks that we reverse the jurisdictional order and the dispositional order based on it.  Because we conclude that substantial evidence supports the juvenile court's jurisdictional order, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Earlier proceedings involving mother

We briefly describe earlier dependency proceedings involving mother insofar as they relate to the instant appeal.

---

[1]    All subsequent undesignated statutory references are to the Welfare and Institutions Code.

### A.     Proceedings involving J.K. and Cassandra

In January 2016, the juvenile court sustained a dependency petition filed on behalf of two of mother's children, J.K. and Cassandra I.  The court determined that mother had physically abused J.K., had engaged in domestic violence with George I., Cassandra's father, and had a history of marijuana abuse.

The court terminated jurisdiction over Cassandra in February 2017 with an order granting George sole physical custody of Cassandra.  In July 2018, mother's parental rights over J.K. were terminated.

### B.     Proceedings involving Cassandra

In August 2021, the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition on behalf of Cassandra alleging that George and mother engaged in physical altercations in front of Cassandra, that mother physically abused Cassandra, and that both George and mother abused marijuana.

According to DCFS's August 2021 detention report, George reported that mother had hit and punched Cassandra, had hit and bitten him, and had caused damage to his home.  George further reported that mother, who was seven months pregnant at the time—with Yasmine, not George's child—smoked marijuana.

DCFS's detention report also described a July 2021 interview with mother.  Relevant here, mother acknowledged being seven months pregnant, that she used marijuana, and that she had done so as recently as a month earlier, but said that how often she used marijuana was her "personal business."  Mother denied smoking marijuana in the presence of Cassandra.  Mother further informed DCFS that she was in a relationship with father

but declined to give the social worker father's contact information.

Mother tested positive for marijuana on July 17, 2021, the day after her interview with DCFS.

DCFS's October 2021 jurisdiction/disposition report described further interviews with Cassandra and George. Cassandra said that mother used drugs, but Cassandra did not identify the type of drug. Cassandra had not seen mother use drugs, but had overheard mother mention drugs to mother's friend. George also reported that mother smoked marijuana, and that "[s]he like[d] smoking . . . ." He said that "on different occasions, when mother has been in his home, he ha[d] asked mother to smoke outside the house," but that she smoked inside anyway.[2]

According to the same report, mother had an additional positive marijuana test on July 28, 2021.

## II.    Proceedings involving Yasmine

Meanwhile, on September 28, 2021, DCFS received a referral for Yasmine, then less than one month old, alleging she was the victim of general neglect based on the same allegations at issue in the pending dependency petition involving Cassandra.

### A.    Detention report

According to a DCFS detention report dated November 4, 2021, mother had been uncooperative with DCFS's efforts to meet Yasmine, born in September 2021. In late September 2021, the social worker assigned to Cassandra said that mother would not

---

[2]    Based on the context of these reported statements, it appears that they refer to smoking marijuana.

4

give DCFS mother's home address and would not allow DCFS to meet Yasmine.  During a monitored visit with Cassandra, mother denied that the newborn she was carrying was Yasmine; she said it was her friend's baby.

At a subsequent monitored visit with Cassandra on October 6, 2021, DCFS informed mother about the open referral for Yasmine.  Mother said that DCFS did not need to know anything about Yasmine.  Mother refused to give DCFS her home address and would not tell DCFS where Yasmine resided or the hospital where Yasmine was born.  Mother also declined to bring Yasmine to a DCFS office.  Although mother provided DCFS with her phone number, it was not in service two days later.  DCFS's effort several days later to contact mother using a different phone number it received from Cassandra's foster parent was also unsuccessful.

On October 19, 2021, a DCFS social worker went to the police department to file a missing person's report for Yasmine.  The police called mother, who answered.  After speaking with police, mother agreed to allow DCFS to visit her home to meet Yasmine.

A DCFS social worker visited mother's home later that day.  The home, a one-bedroom apartment, was organized, appropriately furnished, and free from visible hazards.  Mother was residing there with Yasmine and father.  Yasmine's crib was clean and the social worker observed plenty of clothing and diapers.  The social worker did not observe any drugs or drug paraphernalia.  The kitchen had ample food, the utilities worked, and there were no observable dangers in the home that would affect Yasmine.

Mother denied any abuse or neglect of Yasmine and said both she and father had significant support from their relatives. Mother explained that she had not wanted DCFS to meet Yasmine because of her concern that DCFS would remove Yasmine from her custody.

Mother denied smoking marijuana regularly and reported smoking it "on occasion when she is out of the home with friends." She also denied smoking marijuana in the home or when Yasmine was in her care. She had only smoked a small amount of marijuana once when she was pregnant due to her nausea, and agreed to drug test on demand.

Father also denied any abuse or neglect of Yasmine and reported that mother took good care of Yasmine. Father said he had no concern about mother using drugs, and that mother did not smoke marijuana in the home or in Yasmine's presence. Father denied any substance use.

DCFS contacted father later that day to ask about his criminal history, including several arrests and charges for drug possession. At first, father said he was only arrested in 1999 for assault. After the social worker asked him to be forthcoming, father acknowledged an arrest in 2019 for possession of cocaine, but said he was later exonerated. He also denied any past or current substance use.

On October 21, 2021, father agreed to drug test the following day. However, father failed to appear for the drug test. On October 26, 2021, father told DCFS he was unable to take the drug test the week before because he was taking care of Yasmine, but remained willing to test. DCFS then informed him it would submit a referral for a drug test the next day.

6

Also on October 26, 2021, DCFS received a positive marijuana test result from mother's drug test six days earlier.

Then, on October 27, 2021, father told DCFS he would not take a drug test unless a court ordered him to do so because he believed it violated his constitutional rights. DCFS informed him a drug test would assist with its investigation given his prior criminal history. Father said his criminal history report was incorrect, that his identity must have been stolen, and that he had not been arrested for possession or sale of drugs since 2010. When asked about arrests in 2016, 2017, and 2019 involving possession and sale of cocaine and phencyclidine, father recanted his earlier statement but said he had " 'paid [his] dues to society' " and should not be questioned about his criminal history.

That same day, DCFS received Yasmine's medical records from the hospital where she was born.[3] The records indicated that Yasmine was born healthy with negative toxicology results. The records also stated, however, that mother reported using marijuana once or twice weekly and had used marijuana as recently as three weeks before Yasmine was born. The records also stated, "Newborn affected by material use of other drugs of addiction," but further details were not provided.

On October 28, 2021, the juvenile court denied DCFS's request for a removal order.

Several days later, mother told DCFS that father was not Yasmine's father and should not be involved in Yasmine's dependency case. According to mother, father had been providing support for mother and Yasmine because he was a kind person.

---

[3] Mother provided DCFS with information about the hospital where Yasmine was born during the earlier home visit.

DCFS contacted father the next day. Father said he was indeed Yasmine's father and believed that mother was lying so that he would not be involved in the dependency proceedings. He also said he would cooperate with DCFS and any court orders because his priority was Yasmine's well-being, and that he would care for Yasmine by himself if needed.

Based on its investigation, DCFS's November 4, 2021 detention report recommended Yasmine be detained.

## B. Dependency petition

On November 12, 2021, DCFS filed a dependency petition pursuant to section 300 on behalf of Yasmine.

Counts a-1 and a-2 alleged that mother's history of domestic violence with George and history of physical abuse of Cassandra and J.K. placed Yasmine at risk of serious physical harm. Based on those same allegations, counts b-1 and b-2 alleged that mother had failed to adequately protect Yasmine.

Count b-3 alleged that mother had a history of marijuana abuse, including a history leading to dependency jurisdiction over J.K. and Cassandra, and was a current abuser of marijuana, rendering mother unable to provide regular care to Yasmine. Count b-3 further alleged that father "reasonably should have known" of "mother's substance abuse and failed to take action."

Count b-4 alleged that father had a criminal history of possession and sale of drugs and was a Registered Controlled Substance Offender, placing Yasmine at serious risk of physical harm.

Counts j-1, j-2, and j-3 mirrored counts a-1, a-2, and b-3, respectively, and alleged that because of mother's abuse and neglect of J.K. and Cassandra, there was a substantial risk of abuse or neglect to Yasmine.

8

At a November 18, 2021 hearing, the juvenile court found father to be Yasmine's presumed father. It further ordered that Yasmine be detained from parental custody, granted the parents monitored visits, and set the matter for an adjudication hearing.

## C. Jurisdiction/disposition report

DCFS prepared a jurisdiction/disposition report dated January 26, 2022.

The report described DCFS's follow-up interview with mother on December 6, 2021. Mother met father five years earlier, and had been residing with him for about four months.[4] They were not married. Prior to Yasmine's removal, she had been residing with mother and father, who together had been caring for Yasmine.

Regarding her marijuana use, mother said that marijuana was not a "heavy drug and she used it 'once in a blue moon.'" She used it when she was out with friends, two to four times a month; she last smoked it about two weeks earlier. Mother had been using marijuana since she was 19 years old and her consumption had not increased since then. Mother denied

---

[4] Although the DCFS report states that mother "reported that she has been residing with *Mrs.* Davis for about four months" (italics added), the reference to "Mrs." appears to be an error. Immediately preceding that, the report states that "Mother reported that she resides with . . . father" at an apartment in Inglewood. Citing the same page of the DCFS report, respondent DCFS's brief states that mother "reported she had been residing with father for approximately four months." Father's reply brief does not contend that DCFS's assertion was erroneous.

9

George's claim that she smoked marijuana "all the time," including inside his home.

Mother did not believe her marijuana use affected her parenting. She said that there were "many people who smoke marijuana and take care of their children." She also said she did not keep marijuana inside the home.

Father knew about her marijuana use, according to mother. She said father " 'let's me do my own thing,' " and "is 'ok with it. I'm grown, it's ok, [I'm] not negligent with my duties.' " She emphasized that she used marijuana recreationally, and did not use it around Yasmine.

According to the report, mother did not report to a drug test on December 22, 2021.

DCFS also spoke with father on December 27, 2021. Regarding the allegation that he failed to protect Yasmine from mother's marijuana abuse, father said, " 'I have to agree to disagree with that. I disagree that I should have taken measures or taken her out of the equation for the safety or wellbeing of my daughter. But I can understand it that I should have done something about the situation of mother smoking marijuana.' " Father "knew if anyone jeopardized his daughter's safety, it would not be ok, but he did not know that mother using marijuana would lead to this"—he only thought "heavy drugs" would, but he now understood otherwise.

Father learned about mother's marijuana use about one week after meeting her, about five years earlier. He acknowledged mother smoked marijuana while pregnant with Yasmine. He said he told mother he wasn't "in agreement" with it and spoke to her about it on different occasions, and had even warned her he'd be resentful if Yasmine was born with any

10

resulting health problems.  Mother would then decrease her use.  According to father, mother's marijuana use varied from one to three times weekly, and up to twice daily.  Sometimes she used it less.  Father now agreed mother should stop smoking marijuana and complete any court-ordered services necessary to reunify with Yasmine.

According to DCFS's report, father had a substantial criminal history, including several convictions for possession and sale of drugs.[5]  When asked about his criminal history and substance use, father said, " 'I'm not a user' " and Yasmine was " 'not in . . . jeopardy.' "  Father acknowledged using marijuana recreationally when he was younger, but had not used it since 1999; he also acknowledged using phencyclidine recreationally in 1991, but not since then.  He further explained that although he

---

[5]  Father had (1) a May 1986 misdemeanor conviction for carrying a loaded firearm in public; (2) an October 1986 misdemeanor conviction for possession of narcotics/controlled substance for sale; (3) an October 1987 felony conviction for possession/purchase of cocaine base for sale; (4) an April 1992 felony conviction for possession of a controlled substance and loaded firearm; (5) an October 1997 felony conviction for possession of a controlled substance; (6) an February 1999 felony conviction for kidnapping; and (7) a May 2016 felony conviction for possession of phencyclidine for sale.  Father also appears to have been convicted of a felony in October 1994, but the nature of the conviction is not clear from the information in the jurisdiction/disposition report.  The jurisdiction/disposition report also indicates that father was convicted in December 2016 of violating Penal Code section 11378.5, which criminalizes possession "for sale [of] phencyclidine or any analog or any precursor," but the nature of the conviction is not otherwise described.

had initially objected to DCFS's request that he drug test, he was now willing to do so "to show to [the] court that he is doing what he needs to" do to reunite with Yasmine. Father also acknowledged having a criminal history but said "he has completed his time" and was exonerated of the most recent charges.

Father tested negative for drugs on December 15 and 28, 2021.

### D. Jurisdiction hearing

The juvenile court held a jurisdiction hearing on January 27, 2022, regarding the pending dependency petitions involving Cassandra and Yasmine. The court admitted the DCFS reports described above and heard testimony and argument from the parties.

Relevant here, mother testified that she used marijuana to treat an injury that arose from a car accident. She did not smoke it; she ate edible marijuana. Mother did not believe her drug use posed a risk to Yasmine. She never informed DCFS that she used marijuana to treat an injury because she "didn't think it was a big issue."

Following argument of counsel, the court sustained count b-3 involving mother's marijuana abuse and father's failure to protect Yasmine. The court cited evidence that mother used marijuana during her pregnancy, used marijuana up to twice a day, and that father was aware of mother's marijuana use. The court also found that father understood the dangers posed by the drug during mother's pregnancy and after, given father's own history of drug use. Last, the court did "not find credible [father's] statements that he tried to protect" Yasmine.

12

The court also sustained counts j-1 and j-2 based on mother's history of domestic violence with George and prior physical abuse of J.K. and Cassandra. It dismissed the remaining counts.

### E.   Disposition hearing

The court held a disposition hearing on February 4, 2022. It declared Yasmine a dependent, removed Yasmine from her parents, ordered DCFS to provide the parents with reunification services, and granted the parents monitored visitation.

Regarding father, the court again observed that father failed to protect Yasmine from mother's substance abuse. Although the court was encouraged by father's recent negative drug tests,[6] it did not "think the risk has been sufficiently addressed to prevent removal today."

Father timely appealed from the court's jurisdictional and dispositional orders.[7]

---

[6]   According to information submitted by DCFS to the juvenile court on February 3, 2022, father had negative drug test results on January 11 and 25, 2022.

[7]   George also appealed. After examination of the record, his appointed counsel was unable to identify any arguable issues and so informed this court. George did not thereafter present any issues for the court's consideration, and we dismissed his appeal on December 30, 2022. (See *In re Phoenix H.* (2009) 47 Cal.4th 835, 838.)

On February 3, 2022, DCFS filed a motion asking us to dismiss father's appeal "as it concerns" Cassandra because father did not raise any claim of error regarding the orders affecting Cassandra.

## DISCUSSION

Father contends substantial evidence does not support the juvenile court's jurisdictional order sustaining the allegation in count b-3 of the dependency petition that father failed to protect Yasmine from the risks posed by mother's substance abuse. As a result, he contends the jurisdictional order and dispositional order based on it should be reversed, and that the dependency petition should be dismissed as to him entirely.

## I. This case is justiciable

Respondent DCFS argues that father's appeal is not justiciable. According to DCFS, because father challenges only one of several grounds for the juvenile court's exercise of dependency jurisdiction over Yasmine, we need not consider whether the juvenile court's decision sustaining the allegation involving father's failure to protect Yasmine is supported by sufficient evidence. We disagree.

As DCFS points out, when "a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

We deny the motion as moot. Father's appeal does not concern any of the orders regarding Cassandra, who is not father's child.

14

But father's appeal does not challenge the juvenile court's exercise of dependency jurisdiction over Yasmine. Father acknowledges that "the unchallenged findings as to the mother will continue to support dependency jurisdiction over Yasmine pursuant to section 300, subdivisions (b)(1) and (j)." Rather, father's appeal challenges the juvenile court's decision sustaining the allegation in count b-3 of the dependency petition that father failed to protect Yasmine from mother's substance abuse, which was the basis for the court's subsequent dispositional order removing custody of Yasmine from father.

Our Supreme Court's recent decision in *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*), supports our conclusion that father's appeal is justiciable. There, the court considered whether a challenge to a juvenile court's jurisdictional finding was moot where the juvenile court terminated its jurisdiction during the pendency of the parents' appeal. (See *id.* at pp. 275–276.) *D.P.* observed that "a case is not moot where a court can provide the plaintiff with ' "effect[ive] relief." ' [Citation.] In this context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' " (*Id.* at 277.) *D.P.* concluded that the stigma associated with a juvenile court's jurisdictional finding is not enough by itself to overcome mootness, and that such stigma "must be paired with some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision. [Citation.] For example, a case is not moot where a jurisdictional finding affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent [citation]." (*Id.* at pp. 277–278.)

15

Here, the juvenile court's jurisdictional finding that father failed to protect Yasmine from the risks posed by mother's substance abuse resulted in a dispositional order removing Yasmine from father's custody.[8]  Neither party has informed us that the dispositional order is no longer in effect or that father's custody of Yasmine has been reinstated.  Thus, we conclude father's appeal remains justiciable.  (See *D.P.*, *supra*, 14 Cal.5th at 283 ["where a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot"]; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 [even though parent does not contest all jurisdictional findings, court will consider parent's appeal where jurisdictional finding at issue " 'serves as the basis for dispositional orders that are also challenged on appeal' "].)

## II.     Applicable law and standard of review

Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the "child has

---

[8]     DCFS contends father does not challenge the removal order.  We believe this oversimplifies father's appeal.  True, father's challenge to the dispositional order removing Yasmine from his custody is based on his challenge to the jurisdictional order sustaining the portion of count b-3 alleging father failed to protect Yasmine.  But, as noted, the juvenile court's order removing Yasmine from father's custody was based squarely on its earlier determination that father failed to protect Yasmine.  Thus, reversal of the juvenile court's jurisdictional order regarding father's failure to protect Yasmine could result in effective relief for father, particularly because DCFS fails to show any other basis for the juvenile court's order removing Yasmine from father's custody.

16

suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" the "failure or inability of the child's parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A); see *In re L.W.* (2019) 32 Cal.App.5th 840, 848 [describing elements].) "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citation.] The court may consider past events in deciding whether a child presently needs the court's protection. [Citation] A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' " (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216.)

Additionally, our Legislature has declared that the purpose of our dependency statutes "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. . . . The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2, subd. (a).) That is especially so for young children; in cases involving children of "tender years," a finding of "substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767, disapproved on another ground in *D.P., supra,* 14 Cal.5th at

17

p. 283; see also *In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216 ["Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is 'of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety.' "].)

"In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings." (*In re Alexis E.*, *supra*, 171 Cal.App.4th at pp. 450–451.)

## III.  Jurisdictional order

Father contends substantial evidence does not support the juvenile court's jurisdictional order regarding count b-3, and in particular, its determination that father's failure to protect Yasmine from mother's substance abuse caused a substantial risk of harm to Yasmine. Father argues that there was no defined risk of harm to Yasmine at the time of the jurisdictional hearing. We disagree.

We begin by noting the undisputed evidence of mother's longstanding history of marijuana abuse. Mother, 31 years old at the time of Yasmine's birth, acknowledged regularly using marijuana since she was 19 years old, including during her pregnancy with Yasmine. Mother tested positive for marijuana

18

twice during her pregnancy with Yasmine and informed the hospital where Yasmine was born that she used marijuana one to two times weekly.[9] Mother also tested positive for marijuana the month after Yasmine was born and failed to appear for a test a few months later.

Moreover, mother persisted in her regular marijuana use during her pregnancy with Yasmine, even though the juvenile court exercised dependency jurisdiction in 2016 over Cassandra and J.K. due in part to mother's marijuana abuse. Mother was also undeterred in her regular marijuana use by DCFS's investigation—ongoing at the time of her pregnancy with Yasmine—of another dependency referral for Cassandra involving, among other allegations, mother's marijuana abuse. And even though the dependency petition filed on behalf of Yasmine included an allegation regarding mother's marijuana abuse—the *third* dependency petition that included an allegation involving mother's marijuana abuse—at her December 2021 interview with DCFS mother maintained that her marijuana abuse had not affected her parenting. (See *In re Gabriel K.*

---

[9] Although the evidence regarding the frequency of mother's use varied—she told the hospital where Yasmine was born in September 2021 that she used it once or twice weekly; she told DCFS in December 2021 that she used it two to four times monthly and had been using it since she was 19; and father reported to DCFS in December 2021 that she used it one to three times weekly, up to twice daily—it was clearly regular and longstanding. Also, we note that mother initially told DCFS in October 2021 that she used marijuana only once during her pregnancy to treat nausea, contrary to other evidence establishing her repeated use.

(2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Finally, mother's evasiveness during DCFS's initial attempts to meet and assess Yasmine—for example, denying that the newborn she was carrying was Yasmine during a monitored visit with Cassandra, and refusing to let DCFS know where Yasmine resided—provided further support for the juvenile court's conclusion that mother's substance abuse posed a substantial risk to Yasmine. (See *In re E.E.* (2020) 49 Cal.App.5th 195, 213–215 [citing mother's evasive behavior during agency's attempt to investigate dependency referral as support for juvenile court's conclusion that mother's substance abuse posed a risk to children].) Mother only allowed DCFS to visit her residence to meet Yasmine after she was contacted by police.

In the face of this evidence, we accept the juvenile court's determination, which neither mother nor father has appealed, that mother's substance abuse rendered her incapable of providing regular care and supervision of Yasmine. As noted, in cases involving a child of "tender years" like Yasmine, a "finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 767; see also *In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216.)

Furthermore, we conclude that substantial evidence supported the juvenile court's determination that father failed to protect Yasmine from the risk posed by mother's substance abuse. Father does not dispute that he knew about mother's regular marijuana use, including during her pregnancy with

20

Yasmine. Nor does he dispute that he told DCFS during his interview in October 2021, more than a month after Yasmine was born, that he had no concerns about mother's marijuana use. Indeed, when asked during her December 2021 interview with DCFS whether father knew about her marijuana use, mother explained he " 'let's me do my own thing' " and "is 'ok with it.' " That father condoned mother's substance abuse during her pregnancy with Yasmine and after Yasmine was born—instead of, for example, encouraging mother to cease her substance abuse and seek treatment—supported the juvenile court's determination that father failed to protect Yasmine from the risks posed by mother's substance abuse. (See *In re J.C.* (2014) 233 Cal.App.4th 1, 6 [sustaining jurisdiction related to father because he "knew mother was taking drugs while she was pregnant and did nothing to protect his unborn child from her conduct"].)

We acknowledge father later told DCFS during his interview in December 2021 that he was not "in agreement" with mother's marijuana use during her pregnancy with Yasmine, and that mother would decrease her use after he spoke to her about it. But the juvenile court found that father's statements regarding his efforts to protect Yasmine were not credible.[10] As a reviewing court, we do not revisit that credibility determination. (See *In re Alexis E.*, *supra*, 171 Cal.App.4th at pp. 450–451.) Also, the juvenile court's credibility determination was supported

---

[10] Father emphasizes that at the jurisdictional hearing, DCFS's counsel stated that DCFS conceded that father did as much as he could to protect Yasmine from mother's substance abuse. Given the juvenile court's credibility finding, we do not place much weight on the statement of DCFS's counsel.

by the record. Father was not forthright with DCFS about his history of drug-related convictions or prior drug use. The trial court could infer from that evidence, as well as father's initial lack of concern about mother's marijuana abuse, that father's later statement to DCFS that he had concerns about mother's marijuana use while she was pregnant with Yasmine was not credible.

Father emphasizes that although he did not express concern about mother's marijuana use during his interview with DCFS in October 2021, he had been under the misimpression that DCFS would only intervene if a parent was using " 'heavy drugs.' " He notes that by the time of his interview with DCFS in December 2021, he conceded he should have "done something 'about the situation of mother smoking marijuana,' " and was willing to accept services and cooperate with DCFS in order to regain custody of Yasmine. He also points to his four negative drug test results from December 2021 and January 2022. Although we commend father for this, it is not our role as a reviewing court to reweigh the evidence—we review the record in the light most favorable to the juvenile court's order and resolve conflicts in the evidence in favor of that order. (See *In re Alexis E.*, *supra*, 171 Cal.App.4th at pp. 450–451.) It was therefore the trial court's province, not ours, to weigh this evidence against the other evidence in the record, including father's initial lack of concern about the impact of mother's substance abuse on Yasmine.

In his reply brief, father also argues the juvenile court "held father's past drug history against him in finding count b-3 true, finding he should ha[ve] been 'sufficiently aware' of the dangers of drug use during pregnancy and afterwards." Father

argues the juvenile court's conclusion was "speculative" and further contends that "father's past criminal history alone was not a basis for jurisdiction in count b-3." We disagree that the juvenile court's finding was speculative. Because father acknowledged having used marijuana recreationally in the past, the juvenile court reasonably found that father would have understood the impact of mother's abuse of the drug. We also disagree that the juvenile court sustained count b-3 based on father's criminal history. As explained, the juvenile court cited father's drug history—which included past marijuana use in addition to several convictions for possession and sale of drugs—as a basis for its finding that father understood the risks posed by mother's abuse of marijuana.

Last, father emphasizes that during DCFS's home visit in October 2021, the home was organized, appropriately furnished, and free from visible hazards; that there were lots of clothing and diapers for Yasmine; and that both he and mother had caregiving support from their families. But such evidence does not detract from the substantial risk posed to Yasmine by mother's ongoing substance abuse. In his December 2021 interview, only a month before the jurisdictional hearing, father confirmed that he and mother were still in a relationship, that mother "comes off and on to his home," and that mother and he "were responsible for the care of" Yasmine. It therefore would have been reasonable for the juvenile court to infer that, notwithstanding the evidence cited by father, mother would sometimes be alone caring for Yasmine and that her substance abuse would pose a substantial risk of harm to Yasmine. (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 767; see also *In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216; § 300.2, subd. (a) ["The provision of a

home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."].)

In sum, we conclude that substantial evidence supported the juvenile court's jurisdictional finding that father failed to protect Yasmine from the substantial risk of harm posed by mother's substance abuse. (See § 300, subd. (b)(1)(A).)

## IV.  Dispositional order

Father's only argument in support of his request that we reverse the dispositional order, including the removal order, is that it was premised on the allegedly faulty jurisdictional finding. Because we have found that substantial evidence supports that finding and father otherwise does not address the removal order, we reject father's contention that the dispositional order must be reversed.

## DISPOSITION

The January 27, 2022 jurisdictional order sustaining count b-3 of the dependency petition as to father and the February 4, 2022 dispositional order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

HEIDEL, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.